UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & K IP ASSETS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ARMASPEC, INC.,<br><br>    Defendant. | Case No. 3:17-cv-07308-WHO<br><br>**CLAIM CONSTRUCTION ORDER**<br>Re: Dkt. No. 49 |

Plaintiff J & K IP Assets, LLC ("J&K") brings this patent infringement action against defendant Armaspec, Inc. asserting that Armaspec's Stealth Recoil Spring product infringes on J&K's captured spring assembly patent. The parties ask me to construe only three terms of the single patent at issue in this case. My constructions are below.

## BACKGROUND

On August 12, 2014, the United States Patent and Trademark Office issued United States Patent Number 8,800,424 ("the '424 Patent"), which is assigned to J&K. Opening Brief ("Op.") Ex. A ("'424 Patent) [Dkt. No. 49-1]. On December 26, 2017, J&K filed a complaint in this Court asserting patent infringement against Armaspec. Dkt. No. 1. I have since granted Armaspec's motion to dismiss the complaint, granted J&K's motion to dismiss/strike Armaspec's answer to the first amended complaint, and denied Armaspec's motion to stay pending *inter partes* review. Dkt. Nos. 27, 34, 45. The parties briefed disputed claim terms from June 14 to July 5, and a combined tutorial and claim construction hearing took place on July 19, 2019. Dkt. No. 53. The parties expect an institution decision from the Patent Trials and Appeal Board (PTAB) later this month. Dkt. No. 52.

**LEGAL STANDARD**

Claim construction is a matter of law. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "Generally, a claim term is given its ordinary and customary meaning—the meaning that a term would have to a person of ordinary skill in the art in question at the time of the invention." *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1320 (Fed. Cir. 2016) (internal quotation marks and citation omitted). In determining the proper construction of a claim, a court begins with the intrinsic evidence of record, consisting of the claim language, the patent specification, and, if in evidence, the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005); *see also Vitronics*, 90 F.3d at 1582. "A claim term used in multiple claims should be construed consistently . . . ." *Inverness Med. Switzerland GmbH v. Princeton Biomeditech Corp.*, 309 F.3d 1365, 1371 (Fed. Cir. 2002).

"The appropriate starting point . . . is always with the language of the asserted claim itself." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312. "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Such redefinition or disavowal need not be express to be clear. *Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016).

Like a person of ordinary skill in the art, courts read terms in the context of the claim and of the entire patent, including the specification. *Phillips*, 415 F.3d at 1313. The specification is "the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). The court may also consider

2

1  the prosecution history of the patent, if in evidence. *Markman*, 52 F.3d at 980. In most situations, analysis of this intrinsic evidence alone will resolve claim construction disputes, *Vitronics*, 90 F.3d at 1583; however, a court can further consult "trustworthy extrinsic evidence" to compare its construction to "widely held understandings in the pertinent technical field," *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999).

**DISCUSSION**

**I.  DESCRIPTION OF THE TECHNOLOGY**

The '424 Patent claims a captured spring assembly for a firearm. The key advancement of the invention is that it reduces the loud vibration noises that can result from firing a firearm. *See* '424 Patent 1:50–54 (noting that in some AR-15 rifles, the bold return spring rubs against the walls of the extension tube and results in "a loud and annoying buzzing sound that can exceed a second in duration after each round is fired"). This noise reduction is possible because of the guide rod, buffer, and shock absorber, which together control the spring's movement during compression.

**II.  DISPUTED TERMS**

The parties dispute only three terms from the '424 Patent. J&K argues that two of the three should have their ordinary and customary meaning and further criticizes Armaspec for departing from that view, which it expressed in its petition for *inter partes* review. Op. 1; *see* Shih Decl. Ex. A (IPR Petition) [Dkt. No. 39-2] 12–13 (referring only to the *Phillips* standard for ordinary and customary meaning and proposing no alternative constructions). Armaspec's response brief does not address its reasons for deviating from its position before the PTAB.

**A.  "internal limit element"**

| Term | J&K's Proposal | Armaspec's Proposal |
|---|---|---|
| "internal limit element" | Ordinary and customary meaning, which is a "limit element located internally" | "A flange that protrudes inwardly from a surface." |

This term can be found in claims 1 and 10. J&K argues that I need not construe this term because its meaning is clear and because the patent does not specify an alternate definition.[1] Op.

---

[1] By contrast, the patent specification provides: "In the context of the specification, the terms 'rear' and 'rearward,' and 'front' and 'forward' have the following definitions: 'rear' or 'rearward'

3

Brief 6. Armapsec argues that limit element "is not a common term with well-known meaning and will sound technical to a jury." Resp. 5. It asserts that the '424 Patent has only one embodiment, and the language and figure associated with that embodiment shows the "internal limit element" as a flange. Resp. 6; *see* '424 Patent 2:29–32 (providing that "flange 36 protrudes inwardly from the [slider 38's] interior surface [40] to define an aperture 94 and to limit forward movement of the bold return spring"); Figure 1B. J&K does not dispute that Armaspec accurately describes that embodiment. Instead it argues that Armaspec's proposal lacks support in the claim language and is incompatible with a second embodiment described in the specification.

I agree with J&K that this term needs no construction. Armapsec's proposal injects confusion rather than clarify the term, and it imposes restrictions on scope that lack support in the claim language. The Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."[2] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005). This is so because the claims, not the embodiments, determine the scope of the patent grant and because people of ordinary skill in the art "rarely would confine their definitions of terms to the exact representations depicted in the embodiments." *Id.* Armaspec does not support its proposal with the language from the claims themselves. Accordingly, I decline to construe the term with these limitations. "Internal limit element" will have its ordinary and customary meaning.

**B.   "interior flange"**

| Term | J&K's Proposal | Armaspec's Proposal |
|---|---|---|
| "interior flange" | Ordinary and customary meaning, which is a "flange located interiorly" | "A flange that protrudes inwardly from a surface." |

The parties dispute whether I should construe "interior" to mean "that protrudes inwardly from a surface." As above, Armaspec's proposal lacks support in the claim language and instead

---

means in the direction away from the muzzle of the firearm while 'front' or 'forward' means it is in the direction towards the muzzle of the firearm." '424 Patent 5:22–26.

[2] J&K argues, and Armapsec disputes, that the patent describes a second embodiment. Op. 8–9; Resp. 6. I need not resolve this question because even assuming Armaspec is correct that the '424 Patent describes only one embodiment, I would not adopt its proposed construction.

4

comes from the specification.[3] *See* Resp. 8. I will construe "interior flange" as having its ordinary and customary meaning.

### C. "buffer having a forward end"

| Term | J&K's Proposal | Armaspec's Proposal |
|---|---|---|
| "buffer having a forward end" | "A buffer with[4] an end that can be positioned towards the rifle's muzzle." | "A buffer having a part of an area that is closer to the muzzle of the firearm." |

The third disputed term can be found in claim 10, and it affects dependent claims 11 through 14. The parties agree that the term should be construed and that the construction should account for the specification's definition of "forward": "in the direction towards the muzzle of the firearm." '424 Patent 5:25–26.

Armaspec argues that "end" should be construed as "a part of an area." I disagree. Jurors do not need help understanding the word, and Armaspec's proposal injects confusion. The parties also dispute whether the term rifle or firearm should be used alongside the term muzzle. Claim 10 indicates in the preamble that it claims "[a] buffer assembly for a rifle." '424 Patent 6:42. Armaspec presumably draws its proposal from the specification's definition for "forward," which describes the muzzle of the firearm. *Id.* 5:25–26. But it makes most sense to maintain consistency with the language of the claim where the term at issue can be found; accordingly, I will construe the term with the word rifle rather than firearm.

The final dispute relates to the remaining language about the positioning of the buffer. J&K argues the buffer's end *can* be positioned *toward* the muzzle while Armaspec contents that it *is* positioned *closer* to the muzzle. J&K first argues that Armaspec's proposal would require the buffer to be placed within a firearm, whereas the claim language merely describes the intended use of the buffer as part of the technology. Op. 14. Armaspec counters that its proposal does not contain a requirement that the buffer be inside the firearm because "the firearm is already recited

---

[3] Even its grounding in the specification is weak. Armaspec argues that "the specification further defines interior as 'protrudes inwardly from the surface.'" Resp. 8. But the full sentence in fact reads: "A flange 36 protrudes inwardly from the interior surface to define an aperture 94 and to limit forward movement of the bold return spring." '424 Patent 3:29–32. This language certainly does not serve to redefine interior, and it does not support Armaspec's proposal.

[4] J&K consents to either "with" or "having."

5

in the preamble." Resp. 10. Second, J&K contends that the patent's language does not support Armaspec's injection of the words "closer to" because the patent uses the word "forward" to describe direction, rather than proximity. Op. 14. According to Armaspec, J&K improperly isolates "forward" and "end" whereas the term "forward end" should be read together. Resp. 10.

The parties agree that the patent language does not require that the buffer be within the firearm. *See* Op. 14; Resp. 10. J&K's proposal better reflects the absence of such a requirement. I also agree with J&K that Armaspec's proposal of "closer to" improperly imposes a proximity requirement when the specification language defines "forward" in terms of orientation. Accordingly, I will construe the term "the buffer having a forward end" as "the buffer having an end toward the rifle's muzzle."[5]

## CONCLUSION

For the foregoing reasons, I will construe "internal limit element" and "interior flange" with their ordinary and customary meaning and "buffer having a forward end" as "buffer having an end toward the rifle's muzzle."

**IT IS SO ORDERED.**

Dated: August 5, 2019

William H. Orrick
United States District Judge

---

[5] When I proposed this construction at the hearing, neither party objected.